## JAMES STREETER, JR. *v.* STATE OF MARYLAND

[No. 21, September Term, 1968.]

*Decided November 20, 1968.*

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Thomas J. Aversa, Jr., (G. Denmead Le Viness on the brief)* for appellant.

*Henry J. Frankel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Hilary Caplan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MORTON, J., delivered the opinion of the Court.

The appellant, James Streeter, Jr., was convicted in the Crim-

inal Court of Baltimore by Judge James A. Perrott, in a non-jury trial, of disorderly conduct, resisting arrest and of being a rogue and vagabond. He was given consecutive sentences of thirty days, one year and two years, respectively. His Motion for Judgment of Acquittal was granted to an indictment for murder.

The record indicates that the appellant was in a carry-out restaurant in Baltimore City about 1:50 A.M. on January 25, 1967. According to the assistant manager, he had consumed one sandwich and had ordered another but was without funds to pay for it. Since closing time was 2:00 A.M., the assistant manager asked him to leave and he refused. After several such requests went unheeded, he was told that unless he left, the police would be called. He refused to leave and, as an individual in the establishment left to get the police, the policeman on the beat walked in the door. The officer made several requests of the appellant to leave and instead of complying, he picked up a table knife and endeavored to slide it into his pocket. The officer promptly retrieved the knife, placed him under arrest and took him out of the shop. The assistant manager testified that he observed them traverse a city block during which time the officer had the appellant by his belt and the appellant was continuously struggling to break away.

Another witness testified that he observed the appellant being taken to the "call box"; that he was struggling to get away; that when they reached the call box he noticed the officer "falling backward on the pavement." He then noticed the appellant running down the street toward him and at the same time a passing taxi cab driver shouted, "Grab him," which the witness promptly did and, with the aid of another individual, kept the appellant subdued until police arrived.

The cab driver testified that he observed the appellant and the officer at the call box; saw the officer collapse while making the call; and saw the appellant running away.

A police officer testified that he arrived at the call box in response to a radio call; found the arresting officer lying on the sidewalk and immediately called an ambulance. The officer was taken to a hospital where he was pronounced dead as a result of a heart attack which, according to a representative of the

medical examiner's office, was due to natural causes and un-related to the events involving the arrest of the appellant. The officer searched the appellant and found two pairs of scissors in his coat pocket. Another officer testified that he found a table knife on the sidewalk under the arresting officer's body.

The appellant, who admitted numerous prior convictions, tes-tified that at the time of his arrest he "was drunk"; that he remembered being arrested in the shop; that he remembered being at the call box when the officer collapsed and "I panicked and didn't know exactly what to do. I got scared; I didn't know what to do but run." He also testified that "each time I get in trouble I been drinking." He did not recollect taking the table knife.

In this appeal, the appellant contends that the evidence was legally insufficient to support his convictions. He argues (1) that "he was not acting in a disorderly manner"; (2) that "he does not remember resisting" the arresting officer; (3) that the evidence failed to show that he had the knife concealed up-on his person or was carrying it openly with intent to injure any person. In our opinion these arguments are without sub-stance.

The appellant was convicted of violating Maryland Code, Art. 27, Sec. 123, which provides in part:

> "Every person who shall be found drunk, or acting in a disorderly manner to the disturbance of the public peace * * * in any store during business hours, * * * shall be guilty of a misdemeanor * * *."

The applicability of this statute was before this Court in *Bacheller v. State,* 3 Md. App. 626 and *McIntyre v. State,* 1 Md. App. 586. In each instance we adopted the language of the Court of Appeals in *Drew v. State,* 224 Md. 186, where Judge Hammond (now Chief Judge), speaking for the Court, said (at p. 192):

> "The gist of the crime of disorderly conduct un-der Sec. 123 of Art. 27, as it was in the cases of com-mon law predecessor crimes, is the doing or saying, or both, of that which offends, disturbs, incites, or tends to incite, a number of people gathered in the same area.

> 3 Underhill, *Criminal Evidence,* Sec. 850 (5th Ed.), adopts as one definition of the crime the statement that it is conduct 'of such a nature as to affect the peace and quiet of persons who may witness the same and who may be disturbed or provoked to resentment thereby.' Also, it has been held that failure to obey a policeman's command to move on when not to do so may endanger the public peace, amounts to disorderly conduct."

See also *Cantwell v. Connecticut,* 310 U. S. 308-309; 12 Am.Jur.2d, *Breach of Peace,* § 8.

Although the record does not reveal the exact number of people in the store at the time of the appellant's refusal to leave, it is clear that the assistant manager, one employee and another individual were on the premises in addition to the police officer. The conduct of the appellant, in our opinion, offended, disturbed or, at least, "tended to incite" the individuals then on the premises, particularly since he was apparently insisting upon being served food, although without funds, and it was closing time and the shop could not be closed until he departed. His conduct could have precipitated a melee had the assistant manager not exercised good judgment by seeking the aid of a police officer rather than resorting to self help. The conduct and demeanor of the appellant did not abate when the officer arrived. In fact it became more aggravated by his attempt to purloin the table knife. Under these circumstances, we think it is clear that the appellant was "acting in a disorderly manner to the disturbance of the public peace" within the meaning of the statute as it has been judicially interpreted.

Having found the arrest to have been lawful, it is apparent from the facts set forth above that there was ample evidence to support the appellant's conviction of resisting arrest. *Carwell v. State,* 2 Md. App. 45.

Likewise, there was legally sufficient evidence to support his conviction of violating Md. Code, Art. 27, Sec. 490, which provides in part as follows:

> "If any person * * * shall have upon him any pistol, hanger, cutlass, bludgeon, or other offensive weapon,

also at places and under circumstances from which may be presumed an intent feloniously to assault any person * * * such person shall be deemed a rogue and vagabond * * *."

The trial judge in announcing his verdict of guilty on the rogue and vagabond count of the indictment stated:

"After having heard all of the evidence in this case, I am firmly convinced that you took that knife for one purpose and one purpose alone, that was to inflict injury upon someone."

Under the facts and circumstances present in this case we agree with the reasoning of the lower court and we cannot say that the judgment was clearly erroneous. Md. Rule 1086. *Shipley v. State,* 243 Md. 262, 270.

*Judgments affirmed.*