589 A.2d 493

**Donald E. WASHINGTON**

v.

**STATE of Maryland.**

**No. 866, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 3, 1991.

José Felipé Anderson, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before GARRITY and ROSALYN B. BELL, JJ., and H. KEMP MacDANIEL, Judge (Retired, Specially Assigned).

GARRITY, Judge.

The appellant in this case, Donald E. Washington, was convicted by a jury in the Circuit Court for Baltimore City of attempted breaking and entering, malicious destruction of property, and resisting arrest. Concurrent sentences totaling three years were imposed at the conclusion of the trial on May 10, 1990.

In this appeal appellant argues that the trial judge erred by:

1. Admitting certain evidence which, according to the applicant, was inadmissible hearsay;
2. Incorrectly defining the crime of resisting arrest in his jury instructions; and

3. Refusing to instruct the jury on the law of circumstantial evidence in the manner requested by defense counsel.

Robert Jackson was at his home on West North Avenue, Baltimore City, on the evening of April 1, 1990. Between six and seven o'clock that evening he heard a noise at the back of his house. He went to investigate and when he did he saw appellant standing under the porch. The appellant was kicking the back door. Mr. Jackson asked appellant what he was doing and over objection was permitted to testify that appellant answered him by asking: "Does anybody live next door?" Mr. Jackson responded to this question with yet another question: he asked why appellant wanted to know if anyone lived next door. Appellant responded to this question by stating that he was looking for a place to sleep. This answer apparently satisfied Mr. Jackson, and he returned inside his house. He soon had second thoughts about the matter, however, and telephoned the police to report the incident.

At that time, Officer Philip Sexton was on motor patrol in Mr. Jackson's neighborhood. He received the call and began searching the area for suspects. He saw the appellant in the 1800 block of Clifton Avenue and, because appellant matched the description, stopped him. He then detained appellant while other officers brought Mr. Jackson to the scene for a show-up identification. When Mr. Jackson observed the appellant, he identified him as the man he had seen at his house. At that point, Officer Sexton placed appellant under arrest and called for a prisoner transport van. While he waited for the van, he searched appellant and handcuffed him. When the van arrived, Officer Sexton, in the company of two other officers, escorted the appellant to the van. As the officers were maneuvering appellant into the van, appellant struck Officer Sexton in the shoulder and knocked him off balance. Appellant then took off running. The three officers pursued and captured the appellant after a short chase.

## I

### *Hearsay*

■ The first issue is whether improper hearsay was admitted. The evidence in dispute is Mr. Jackson's testimony that appellant asked him: "Does anybody live next door?" This response, appellant avers, was hearsay which prejudiced his defense because it bolstered Mr. Jackson's testimony.

■ Hearsay is defined as an out-of-court statement offered in court for the truth of the matter contained therein, thus resting for its value on the credibility of the out-of-court declarant. *Cassidy v. State*, 74 Md.App. 1, 6, 536 A.2d 666 (1988). In *Jones v. State*, 310 Md. 569, 588, 530 A.2d 743 (1987), the Court of Appeals noted that testimony is not hearsay when it is "not offered as an assertion of truth." Because the complained-of testimony in this case was simply a question, it was not offered as an assertion of truth and, hence, did not constitute hearsay. The trial judge did not admit hearsay.

## II

### *Jury Instruction—Resisting Arrest*

■ In presenting this argument appellant complains that the trial judge misunderstood the nature of the crime of resisting arrest. According to appellant the crime of resisting arrest may be committed only up to the time when the police effect physical control over the arrestee. The appellant states that at that time the arrest is over, and hence any subsequent resistance by the suspect would have to constitute some crime other than resisting arrest.

Consistent with this theory, the appellant requested the trial judge to instruct the jury that "once an arrest is completed he cannot resist by later physical activity." The trial judge refused to give this instruction but instead instructed the jury:

In order for the defendant to be found guilty of [resisting arrest] the State must prove, beyond a reasonable doubt, that number one, there was an arrest of the defendant. Number two, that the arrest was lawful. Number three, that there was a refusal to . . . [submit] to the arrest by the defendant. Four, that the resistance was to an officer of the law in the performance of his duties. And five, that the officer had identified himself as an officer. An arrest is the detention of a known or suspected offender for the purpose of prosecuting him for a crime. The act of arresting includes the taking, the seizing or the detaining of the person of another, touching or putting hands upon him, or any act indicating an intention to arrest.

In defining arrest, the trial judge explained that an arrest includes both a "taking" and a "detaining." By doing this, the trial judge effectively instructed the jury that the crime of resisting arrest could be committed if the resistance occurred anytime while the suspect was in the custody of the arresting officer, even for a period of time after the arrest was first effected.

The specific question before us is whether the physical resistance element of the crime of resisting arrest must be effected before or at the time of the arrest or whether the physical resistance may occur after the arrest is effected but during the time the arrestee is in the physical custody of the arresting officer.

The question has never been considered by an appellate court of this State. In answering it we begin by looking to the way the Court of Appeals has defined the crime of resisting arrest. The Court, in its most recent explanation of the crime, defined the offense as "[a] refusal to submit to lawful arrest and resistance to an officer of the law in the performance of his duties . . . ." *State v. Huebner,* 305 Md. 601, 608–09, 505 A.2d 1331 (1986), quoting from *Preston v. Warden,* 225 Md. 628, 629, 169 A.2d 407, *cert. denied,* 366 U.S. 974, 81 S.Ct. 1940, 6 L.Ed.2d 1262 (1961). Previously, the Court in *Busch v. State,* 289 Md. 669, 675, 426 A.2d 954

(1981), said that "the offense of resisting arrest ordinarily requires resistance to a lawful arrest made by an officer of the law in the performance of his official duties." *See also Jordan v. State,* 17 Md.App. 201, 207, 300 A.2d 701 (1973); *Matter of Nawrocki,* 15 Md.App. 252, 289 A.2d 846 (1972); and *Lyles v. State,* 10 Md.App. 265, 268, 269 A.2d 178 (1970). Recently, this Court in *Barnhard v. State,* 86 Md.App. 518, 587 A.2d 561 (1991), upheld a jury instruction in which the trial court defined resisting arrest as consisting of these three elements: (1) the defendant must be arrested; (2) the arrest must be lawful; and (3) the defendant resists or refuses to submit to that arrest. *Id.* at 525, 587 A.2d 561.

In order to decide when the refusal or resistance must occur, we consider the meaning which the Court of Appeals has applied to the term "arrest." Here, our concern is whether an arrest refers to the single event of taking control over an arrestee, or whether it constitutes a continuing event which lasts during the period when the arrestee is in the arresting officer's custody.

The Court of Appeals in *Little v. State,* 300 Md. 485, 510, 479 A.2d 903 (1984), defined arrest in these words:

An arrest is effected (1) when the arrestee is physically restrained or (2) when the arrestee is told of the arrest and submits. *Bouldin [v. State ], supra* 276 Md. [511] at 516, 350 A.2d 130 [(1976)]. In sum "an arrest is the taking, seizing or detaining of the person of another, *inter alia,* by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest." *Morton v. State,* 284 Md. 526, 530, 397 A.2d 1385 (1979).

In defining arrest as it did, the Court considered the state of arrest to include both the initial restraint and some period of detention following the initial restraint. The Court did not define how long the subsequent detention remains part of the arrest—when resistance would cease to be resisting arrest and become an attempted escape; nor is it necessary for us to define that outer limit in this case. It

may depend upon the circumstances. The resistance here occurred while the police were attempting to place appellant into a van to transport him to the police station for booking. It was within a short time after the initial restraint, at the scene of the initial restraint and before any formal charges had been filed. In these circumstances, we think that it could properly fall into the category of restraining the arrestee, that the court's instruction was not incorrect, and that the requested instruction was not an accurate statement of the law.

## III

### *Jury Instruction—Circumstantial Evidence*

■ Finally, appellant charges that the trial judge gave inadequate instructions regarding the law of circumstantial evidence. The trial judge instructed the jury that they should consider both direct and circumstantial evidence and consider each equally. Appellant charges that this instruction was inadequate because in his opinion the trial judge should also have instructed the jury that "if an inference consistent with innocence can be drawn from the circumstantial evidence, the jury must accept that inference."

The rules of procedure require trial judges to instruct juries as to the applicable law. Md.Rule 4–325(c). The Court of Appeals has frequently explained that the rule obliges judges, upon request, to give accurate instructions on all of the essential points of law involved in the proceeding. *Bruce v. State*, 318 Md. 706, 733, 569 A.2d 1254 (1990).

The trial judge refused to give applicant's explanation of the law of circumstantial evidence because he concluded that the requested instruction, as applied to this case, misstated the law. The issue before us is whether the trial judge was correct. In order to decide this question, we must first review the law regarding circumstantial evidence.

In *West v. State*, 312 Md. 197, 539 A.2d 231 (1988), the Court ruled that "a conviction upon circumstantial evidence

*alone* is not to be sustained unless the circumstances are inconsistent with any reasonable hypothesis of innocence." *Id.* at 211–212, 539 A.2d 231 (emphasis in original). The critical part of this explanation, for the purpose of deciding the issue before us in the instant case, is that the rule requiring juries to accept "any reasonable hypothesis of innocence" applies only if *all* of the evidence regarding the issue in dispute is circumstantial. The reason for this is that if juries were always required to favor the circumstantial evidence which would support an inference of innocence to the exclusion of contrary direct evidence of guilt, juries would be required to decide cases with a bias in favor of circumstantial evidence and against direct evidence. This would be contrary to both common sense and the law. The Court of Appeals acknowledged this point in *Wilson v. State*, 319 Md. 530, 536, 573 A.2d 831 (1990), when it observed: "[W]hether the evidence is circumstantial or direct, no greater degree of certainty is required because in either case the trier of fact must be convinced beyond a reasonable doubt of the guilt of the accused."

When a trial judge instructs a jury about circumstantial evidence, he must first consider whether the evidence is totally circumstantial or whether it is only partially circumstantial. When the evidence is totally circumstantial and the circumstances give rise to two different inferences, one consistent with innocence and the other consistent with guilt, the rule stated in *West* applies. In such cases, the jury must be instructed to accept the inference of innocence. On the other hand, if the evidence consists of both circumstantial evidence and direct evidence, the *West* rule does not apply. In these cases, the jury should be instructed to use its own judgment to weigh the evidence, to decide the credibility of witnesses, and to make findings based on a reasoned consideration of all of the evidence. *Binnie v. State*, 321 Md. 572, 580, 583 A.2d 1037 (1991).

A trial judge is required to give instructions which correctly state the law. *Johnson v. State*, 303 Md. 487, 517, 495 A.2d 1 (1985), *cert. denied*, 474 U.S. 1093, 106 S.Ct. 868,

88 L.Ed.2d 907 (1986). Because there was both direct evidence and circumstantial evidence presented in this case, appellant's requested instruction (which would have required the jury to favor circumstantial evidence over the direct evidence) was incorrect. It follows that the trial judge was correct in declining to give the instruction.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.